**Terry WILLIFORD, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 5986.**

Court of Appeals of Alaska.

Oct. 22, 1982.

William Bixby, Asst. Public Defender, Kenai, and Dana Fabe, Public Defender, Anchorage, for appellant.

Charles M. Merriner, Asst. Atty. Gen., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

## OPINION

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

COATS, Judge.

Terry Williford was charged with operating a motor vehicle while intoxicated in violation of AS 28.35.030.[1] She was found guilty in a jury trial and appeals to this court.

---

1. Prior to SLA 1982, AS 28.35.030(a) provided:

    *Driving while intoxicated.* (a) A person commits the crime of driving while intoxicated if he operates or drives a motor vehicle

    (1) while under the influence of intoxicating liquor, depressant, hallucinogenic, stimulant or narcotic drugs as defined in AS 17.10.-230(13) and AS 17.12.150(3);

    (2) when there is 0.10 percent or more by weight of alcohol in his blood or 100 milligrams or more of alcohol per 100 milliliters of his blood, or when there is 0.10 grams or more of alcohol per 210 liters of his breath; or

    (3) while he is under the combined influence of intoxicating liquor and another substance.

    SLA 1982 amended the first sentence of AS 28.35.030(a) by adding "or operates an aircraft or a watercraft." It also amended subsection (a)(1), effective January 1, 1983, to read:

    (1) while under the influence of intoxicating liquor, or any controlled substance listed in AS 11.71.140–11.71.190;

■ Williford first contends that AS 28.-35.030(a) violates the due process clauses of the United States and Alaska Constitutions [2] because that statute fails to give notice of the conduct that is prohibited. Prior to SLA 1982, AS 28.35.030(a)(3) read: [3]

(a) A person commits the crime of driving while intoxicated if he operates or drives a motor vehicle

(3) while he is under the combined influence of intoxicating liquor and another substance.

The jury instructions stated that Williford could be convicted of driving while intoxicated if the jury found that she was operating a motor vehicle while she "was under the combined influence of intoxicating liquor and another substance ...." The evidence at trial showed that before driving Williford had consumed an alcoholic beverage and a drug, Septra DS. The evidence also suggested that before driving Williford may have consumed another drug, Tylenol 3.

Williford argues that the phrases "another substance" and "combined influence" fail to provide sufficient notice of what conduct is prohibited. She relies primarily on *Crutchfield v. State,* 627 P.2d 196 (Alaska 1980). In that case, the defendant had been convicted under former AS 28.35.030(a), which proscribed driving "while under the influence of intoxicating liquor, depressant, hallucinogenic or stimulant drugs or narcotic drugs as defined in AS 17.10.230(13) and AS 17.12.150(3) ...." At trial, the state had presented evidence that Crutchfield was under the influence of alcohol and the drug tranxene. The prohibited character of tranxene was established under 7 AAC 32.-010(b), which states in part:

Any combination of depressant, stimulant, or hallucinogenic drugs, not listed by name or trade name in this chapter, that is *of a composition substantially similar* to any of the drugs or substances listed in

this chapter is also subject to AS 17.-12.... [Emphasis added.]

Though the expert testimony established that tranxene was "of substantially similar composition to valium, a listed drug," the supreme court reversed Crutchfield's conviction because the ordinary person would have no way of knowing whether a drug he was taking was "of a composition substantially similar" to a drug expressly proscribed. The court observed:

'[L]ike a court, most people are not familiar with scientific technology and molecular chemistry.... We thus have grave doubts as to the authority of the commissioner to proscribe drugs based on their similarity of composition to named drugs.'

627 P.2d at 200 (brackets and ellipsis in original) (quoting *State v. Erickson,* 574 P.2d 1, 21 (Alaska 1978)).

Williford contends that the "another substance" language of AS 28.35.030(a)(3) is even more broad than the language of 7 AAC 32.010(b). She argues that she was not given notice that it was unlawful for her to take either Septra DS or Tylenol 3 before driving. We disagree. Although the outer limits of the statute might not be entirely clear, it was designed to prevent a person from driving while intoxicated when she has knowingly consumed alcohol and a drug. The statute certainly gives adequate notice of that intention. *See Stock v. State,* 526 P.2d 3, 7–13 (Alaska 1974). AS 28.35.-030(a)(3) does not require a person to know whether one drug has a chemical composition which is substantially similar to another drug. Rather, it focuses on prohibiting a person from driving when she is under the combined influence of alcohol and any another drug. A person may not be held to understand that a drug she is taking is chemically like another drug. But she may be held responsible, when she has consumed alcohol and a drug, to insure that she is capable of properly operating a car.

---

**2.** U.S. Const. amend. XIV, § 1 provides in part that no state shall "deprive any person of life, liberty, or property, without due process of law...."

Alaska Const. art. 1, § 7 provides in part that "[n]o person shall be deprived of life, liberty, or property, without due process of law."

**3.** SLA 1982 amended the first sentence of the statute. *See supra* note 1.

We also conclude that the words "combined influence" are not unconstitutionally vague. The words simply mean that the drug and the alcohol must both contribute to cause the person to become intoxicated. To avoid violating this statute a person does not have to understand how the drug and alcohol react to cause impairment. The taking of drugs and alcohol puts a person on notice that she may be impaired. It is then her responsibility to make sure that she is not impaired before operating a motor vehicle. *See Morgan v. Municipality of Anchorage,* 643 P.2d 691, 692 (Alaska App. 1982).

Williford next contends that the trial court erred in admitting evidence that she refused to take the breathalyzer examination. Williford claims that the state did not comply with AS 28.35.032 because she was hysterical at the time the officer advised her that a refusal to take the breathalyzer examination could be used against her in a civil or criminal proceeding. Therefore, she contends that her refusal to take the examination was improperly admitted into evidence. AS 28.35.032 reads in relevant part:

*Refusal to submit to chemical test.* (a) If a person under arrest refuses the request of a law enforcement officer to submit to a chemical test of his breath as provided in AS 28.35.031, after being advised by the officer that his refusal will, if that person was arrested while operating or driving a motor vehicle, result in the suspension, denial or revocation of his license or nonresident privilege to drive, that the refusal may be used against him in a civil or criminal action or proceeding arising out of an act alleged to have been committed by him while operating or driving a motor vehicle or operating an aircraft or watercraft while intoxicated, and that the refusal is a misdemeanor, a chemical test shall not be given, except as provided by AS 28.35.035.

. . . .

(e) The refusal of a person to submit to a chemical test of his breath under (a) of this section is admissible evidence in a civil or criminal action or proceeding arising out of an act alleged to have been committed by the person while operating or driving a motor vehicle or operating an aircraft or watercraft while intoxicated.

The state argues that Williford was read the implied consent warning which informed her, among other things, that if she refused the breathalyzer test she would lose her driver's license and that evidence of her refusal to take the test could be used against her in a civil or criminal proceeding. The state reasons that there is no requirement that the defendant understand the implied consent warning. The state posits that if the court imposes such a requirement when a defendant is too intoxicated to understand the implied consent warning, the state would be unable to use the defendant's refusal to take the breathalyzer examination either in an administrative license revocation or in a criminal trial. The state therefore reasons that when the officer reads the implied consent warning to the defendant, the refusal to take the breathalyzer test is admissible in evidence.

■ We do not read AS 28.35.032 as requiring the state to prove merely that the officer read the implied consent warning and that the defendant refused the test, in order for the refusal to take the breathalyzer test to be admissible. First, AS 28.35.032 seems to require that there at least be a reasonable attempt to communicate to a defendant the consequence of a failure to take the breathalyzer examination. Second, even though AS 28.35.032 makes the refusal to take the breathalyzer examination admissible, it does not make the refusal admissible without regard to the other evidence rules. To be admissible evidence is required to be relevant, and the probative value of the evidence should not be outweighed by its prejudicial impact. Evid.R. 401–403. The circumstances surrounding the defendant's refusal to take the breathalyzer examination could be relevant to show the defendant's consciousness of guilt. For instance, if the defendant knows that the breathalyzer test is a test that measures her intoxication and she refuses to take the test, her refusal could lead to the inference

that she refused to take the test because of fear that she would fail the test because she believed she was intoxicated. The circumstances surrounding the administration of the breathalyzer examination could also be relevant to show intoxication. For instance, if the defendant is unable to understand a clear implied consent warning because she is acting in a bizarre manner or for other reasons, this may be relevant evidence indicating possible intoxication. Whether evidence of a refusal to take a breathalyzer examination is admissible is committed to the discretion of the trial court.

We find that the trial court did not err in admitting the evidence of Williford's refusal to take the breathalyzer. A reasonable inference could be made from the evidence that the trooper attempted to inform Williford of the consequences of her failure to take the breathalyzer examination. The jury could have inferred that either Williford understood the consequences of refusing the breathalyzer examination and that she refused to take the examination because she feared it would show she was intoxicated, or that Williford did not understand the consequences of refusal to take the breathalyzer because she was too intoxicated. The jury could also have decided that Williford did not take the breathalyzer examination because she was hysterical as a result of the way in which she was treated by the trooper, and that therefore her refusal should be given no weight. In any event, we cannot conclude that the evidence of Williford's refusal to take the breathalyzer examination was necessarily of so little weight that the trial court erred in admitting it. The evidence did have possible probative value, and the trial court did not err in finding that the probative value outweighed the possibility of prejudice. Evid. R. 403.

The conviction is AFFIRMED.