STANLEY B., Appellant,

v.

STATE of Alaska, DFYS, Appellee.

No. S–10978.

Supreme Court of Alaska.

June 4, 2004.

Michelle McComb, Law Offices of Michelle McComb, Fairbanks, for Appellant.

R. Poke Haffner, Assistant Attorney General, Fairbanks, and Gregg D. Renkes, Attorney General, Juneau, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

EASTAUGH, Justice.

## I. INTRODUCTION

This appeal arises from the termination of Stanley B.'s parental rights to his two children, Sean B. and Sarah B.[1] The Division of Family and Youth Services (DFYS) petitioned to terminate Stanley's parental rights because of his current incarceration and his history of criminal activity and substance abuse. At the termination trial, the superior

---

1. This opinion uses pseudonyms for all family members.

court under authority of AS 47.10.080(*o*) and AS 47.10.088 terminated Stanley's rights to his children. Stanley appeals the superior court's findings that Sean and Sarah were children in need of aid, that DFYS had made reasonable efforts to provide family support services, and that termination served the children's best interests. He also argues that he received ineffective assistance of counsel at the trial. We affirm in all respects.

## II. FACTS AND PROCEEDINGS

Stanley B. and Belinda F. are the parents of Sean B. (born in January 1996) and Sarah B. (born in December 1997). Stanley was arrested for theft by receiving in 1999 and incarcerated. Soon after his arrest, Stanley was released to a third-party custodian and then to a rescue mission. After his arrest, Belinda cared for the children until she was arrested on a drug-related charge. The children were placed with family friends; when the family friends refused to continue to provide care, the children were taken into state custody. The state assumed custody of the children on June 23, 2000. At that time, there was a warrant out for Stanley's arrest because he had violated the terms of his release. He was eventually caught and reincarcerated. The superior court entered an order on July 20, 2000 giving DFYS temporary custody of the children. On August 24 the parties stipulated that the children were children in need of aid under AS 47.10.011(6) and (10); the superior court entered findings and orders of adjudication to that effect on August 29, 2000.

Stanley remained in jail until May 2001, when he was released to a halfway house. After violating the conditions of his parole by attempting to smuggle marijuana into Fairbanks Correctional Center, he was reincarcerated until September 17, 2001. The superior court conducted a permanency hearing on October 19, 2001 and approved DFYS's permanency plan of reunification with the father or adoption if reunification proved unattainable. Stanley was rearrested two months later when he and Belinda committed a robbery that he characterized as "a drug deal gone bad." He was given a six-year sentence to serve. DFYS filed a Petition for Termination of Parental Rights on January 22, 2002. Belinda relinquished her parental rights to Sean and Sarah in May 2002. The superior court terminated her parental rights on July 17, 2002.

DFYS's September 2000 case plan directed Stanley to provide the names and addresses of any person he wished the division to consider for placement of the children. Stanley provided the names of several relatives and friends. DFYS denied all of Stanley's initial placement preferences. The children were placed with a preadoptive family in September 2002. The termination trial took place on January 7, 2003. Superior Court Judge Charles R. Pengilly entered his written findings and orders terminating Stanley's parental rights on January 29, 2003.

Stanley appeals.

## III. DISCUSSION

### A. Standard of Review

■■■■ We apply the clearly erroneous standard when reviewing the factual findings that support the termination of parental rights.[2] We determine that a finding is clearly erroneous "when a review of the entire record leaves us 'with a definite and firm conviction that the superior court has made a mistake.'"[3] Whether the factual findings are sufficient to satisfy the child in need of aid (CINA) statutes and rules is a question of law that we review de novo.[4] Under this standard, we " 'adopt the rule of law that is most persuasive in light of precedent, reason, and policy.'"[5]

**2.** *Frank E. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.,* 77 P.3d 715, 717 (Alaska 2003).

**3.** *G.C. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.,* 67 P.3d 648, 650–51 (Alaska 2003) (quoting *S.H. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.,* 42 P.3d 1119, 1122 (Alaska 2002)).

**4.** *Frank E.,* 77 P.3d at 717.

**5.** *Id.* (quoting *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).

## B. The Superior Court Did Not Clearly Err in Finding that Sean and Sarah Were Children in Need of Aid.

Except as provided in AS 47.10.080(*o*), a superior court may terminate parental rights if it finds by clear and convincing evidence that the child is a child in need of aid under AS 47.10.011,[6] and that the parent has failed to remedy the conduct or conditions in the home that place the child at substantial risk of harm, or has failed to remedy the conduct or conditions within a reasonable period of time.[7] The court must also find by a preponderance of the evidence that DFYS has made reasonable efforts to provide family support services,[8] and that termination serves the best interests of the child.[9] Per AS 47.10.080(*o*), a court may determine that incarceration of the parent is sufficient grounds for determining that a child is a child in need of aid under AS 47.10.011 if it finds by clear and convincing evidence that: (1) the period of incarceration that the parent is scheduled to serve during the child's minority is significant; (2) there is no other parent who will care for the child; and (3) the incarcerated parent has failed to make adequate provisions for care of the child during the period of incarceration. If these conditions are met, the superior court is authorized to terminate parental rights.[10] Under either provision—AS 47.10.088 or AS 47.10.080(*o*)—the termination order is entered under the authority of AS 47.10.080(c)(3).

### 1. Alaska Statute 47.10.080(*o*)

■ The superior court found that termination of Stanley's parental rights was authorized under AS 47.10.080(*o*). It noted that "[n]o party disputes that [Stanley's six-year] incarceration is significant for purposes of AS 47.10.080(*o*)(1)." It found that the termination of Belinda's parental rights satisfied AS 47.10.080(*o*)(2). Additionally, it found that Stanley had the burden to make adequate provisions for care of the child, despite the fact that his children were in DFYS custody when he most recently returned to jail. The court found that Stanley failed to meet the burden of making adequate provisions.

Stanley disputes the superior court's interpretation of AS 47.10.080(*o*), arguing that he had no authority to make adequate provisions for care of his children because they were in DFYS custody at the time of his November 2001 arrest and subsequent incarceration.

The superior court correctly interpreted AS 47.10.080(*o*)(3). The statute obligates the incarcerated parent—not the state—to arrange for the children's care. Stanley's burden was not relieved by the fact that his children were in DFYS custody when he returned to jail. As the state argues, "the statute is not intended to give parents whose children are already in state custody when they are incarcerated an advantage over parents whose children are in their own custody when they are incarcerated." Although the state should not disadvantage an incarcerated parent by blocking his efforts to make "adequate" provisions for his children, it is not obligated to make those provisions for him.

■ Stanley provided DFYS with the names of several relatives and friends with whom he wanted the children placed. The superior court found that DFYS had made "more than reasonable efforts" to consider Stanley's stated preferences. Having reviewed the record, we agree. Because none of Stanley's placement options was facially "adequate," the conditions for termination under AS 47.10.080(*o*) were met.

### 2. Alaska Statute 47.10.011

■ The superior court also found that Sean and Sarah were children in need of aid under both AS 47.10.011(2) and (10). In accordance with AS 47.10.088(a)(1)(A), the court applied the clear and convincing stan-

6. AS 47.10.088(a)(1)(A).

7. AS 47.10.088(a)(1)(B).

8. AS 47.10.088(a)(2).

9. AS 47.10.088(c).

10. AS 47.10.080(c)(3).

dard of proof in finding at the termination stage that the children were in need of aid.

Alaska Statute 47.10.011(2) states that a court may find a child to be a child in need of aid if it finds that "a parent, guardian, or custodian is incarcerated, the other parent is absent or has committed conduct or created conditions that cause the child to be a child in need of aid under this chapter, and the incarcerated parent has not made adequate arrangements for the child." The superior court found the evidence that supported termination of parental rights under AS 47.10.080(o) (the significant period of Stanley's incarceration, the mother's unavailability, and the unsuitability of Stanley's placement proposals) was clear and convincing evidence that Sean and Sarah were children in need of aid for purposes of AS 47.10.011(2). These findings were not clearly erroneous.

Alaska Statute 47.10.011(10) authorizes a court to find a child to be a child in need of aid if it finds that

the parent, guardian, or custodian's ability to parent has been substantially impaired by the addictive or habitual use of an intoxicant, and the addictive or habitual use of the intoxicant has resulted in a substantial risk of harm to the child; if a court has previously found that a child is a child in need of aid under this paragraph, the resumption of use of an intoxicant by a parent, guardian, or custodian within one year after rehabilitation is prima facie evidence that the ability to parent is substantially impaired and the addictive or habitual use of the intoxicant has resulted in a substantial risk of harm to the child as described in this paragraph.

The superior court found that there was clear and convincing evidence the children were in need of aid under AS 47.10.011(10) because it found Stanley "has a significant addiction to substances including alcohol and cocaine, and that addiction impairs his ability to parent his children, in part because it induces him to repeatedly indulge in criminal behavior which results in his incarceration and unavailability to them." The court also found that Stanley "has never completed a substance abuse treatment program and the

likelihood of his spontaneous recovery without out serious treatment is low."

Stanley testified at trial that he used cocaine and marijuana prior to his November 2001 arrest. He was reincarcerated in July 2000 when he violated his parole by attempting to smuggle marijuana into Fairbanks Correctional Center. His Stipulation to Adjudication and Disposition of Child in Need of Aid, which he personally signed in August 2000, states that he "needs to deal with his substance abuse problem." He admitted at trial that he continues to need drug treatment.

Although Stanley disputes the superior court's finding that his addiction substantially impaired his ability to parent, the evidence indicates that Stanley B's drug addictions are at least partially responsible for his current and past incarcerations, and that his frequent and prolonged absences while incarcerated substantially impair his ability to parent Sean and Sarah. There is also evidence that those absences are harmful to the children. This evidence was sufficient to satisfy the clear and convincing standard. Thus the superior court did not clearly err in finding that Sean and Sarah were children in need of aid under AS 47.10.011(10).

**C. The Superior Court Did Not Clearly Err by Finding that Stanley Had Not Remedied the Conduct or Conditions in the Home that Place Sean and Sarah at Substantial Risk of Harm.**

To satisfy AS 47.10.088(a)(1)(B)(i), a court must find that the parent has not remedied the conduct or conditions in the home that place the child at substantial risk of harm. The superior court found that Stanley's repeated incarcerations and substance abuse placed his children at substantial risk of harm. It also found that Stanley had never completed a substance abuse treatment program and that he was not likely to recover without serious treatment. Stanley testified at the termination trial that he continues to need drug treatment. The court's findings were sufficient to satisfy AS 47.10.088(a)(1)(B)(i).

#### D. The Superior Court Did Not Clearly Err in Finding that DFYS Had Made Reasonable Efforts To Provide Family Support Services.

■ Before a court may terminate parental rights under AS 47.10.088, it must find by a preponderance of the evidence that DFYS has made reasonable efforts to provide family support services.[11] Family reunification efforts are not required where the conditions set forth in AS 47.10.080(o) are met.[12] Likewise, under AS 47.10.086(c)(10), the court may, for similar reasons, dispense with the reasonable efforts finding.[13] Stanley was sentenced to six years of incarceration. Because this qualifies as a significant period of his children's minority within the meaning of AS 47.10.086(c)(10), the court was authorized to dispense with the requirement of providing services to him.

■ Nevertheless, the superior court found that DFYS has made reasonable efforts to provide family support services to Stanley. After Stanley's September 17, 2001 release, DFYS had no real opportunity to provide him any services in the brief time he was out of custody before he committed his new offense and was rearrested on November 28, 2001. DFYS arranged visitation between Stanley and his children during the new incarceration until the superior court ordered otherwise. While Stanley is incarcerated, the Department of Corrections (DOC) rather than DFYS has primary responsibility for providing services to him.[14] Stanley testified that he receives substance abuse treatment and parenting classes from DOC. The superior court did not clearly err in finding that DFYS's reunification efforts, when considered in their entirety, satisfy AS 47.10.086.[15]

#### E. The Superior Court Did Not Clearly Err in Finding that Termination of Parental Rights Served the Best Interests of Sean and Sarah.

■ A superior court must consider the best interests of the children before it may terminate parental rights.[16] Here the superior court's findings state: "It is in the best interests of these children to terminate the parental rights of their father. Their need for a stable home and a permanent placement is critical."

These findings are not clearly erroneous. Stanley's inability to demonstrate that he can maintain sobriety outside jail and his repeated incarcerations indicate that he is not a reliable parent. A temporary placement, until Stanley is released from prison, would not satisfy the children's immediate need for permanency and stability. Given their ages, the children risk long-term harm if permanent placement is not made immediately.

#### F. Stanley Did Not Receive Ineffective Assistance of Counsel During Termination Proceedings.

■ Stanley argues that he received ineffective assistance of counsel at the termination trial. He claims that various failures on the part of his attorney amount to a denial of his due process right to effective assistance of counsel.

■ A parent has a due process right to effective assistance of counsel in a termi-

---

11. AS 47.10.088(a)(2).

12. Cf. Frank E. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs., 77 P.3d 715, 722–23 (Alaska 2003) (Matthews, J., concurring).

13. AS 47.10.086(c)(10) provides:
The court may determine that reasonable efforts of the type described in (a) of this section are not required if the court has found by a preponderance of the evidence that the parent or guardian is incarcerated and is unavailable to care for the child during a *significant period of the child's minority,* considering the child's age and need for care by an adult.
(Emphasis added.)

14. Martin N. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs., 79 P.3d 50, 56 (Alaska 2003); T.F. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs., 26 P.3d 1089, 1096 (Alaska 2001).

15. Frank E., 77 P.3d at 720 (stating that we examine state's reunification efforts in their entirety to determine whether they were reasonable).

16. AS 47.10.088(c).

nation of parental rights ' proceeding.[17] Whether this right was violated is a question of law we consider de novo.[18] The test is two-pronged: first, we must find that the counsel's conduct either generally throughout the trial or in one or more specific instances did not conform to the standard of competence; second, the parent must show that the lack of competency contributed to the conviction.[19] We do not need to address the first prong, because Stanley has not demonstrated how any of the alleged errors actually harmed him. He therefore has not satisfied the second prong of the test. We consequently conclude that the contention of ineffective assistance of counsel is without merit.

## IV. CONCLUSION

We AFFIRM the superior court's decision terminating Stanley's parental rights to Sean and Sarah.

---

**17.** *S.B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.,* 61 P.3d 6, 10 (Alaska 2002).

**18.** *Id.*

**19.** *V.F. v. State,* 666 P.2d 42, 46 (Alaska 1983).