Philip P. SHERIDAN, Appellant,

v.

MUNICIPALITY OF ANCHORAGE, Appellee.

No. A–8617.

Court of Appeals of Alaska.

Oct. 29, 2004.

Andrew J. Lambert, Kalamarides & Lambert, for the Appellant.

John E. McConnaughy III, Assistant Municipal Prosecutor, and Frederick H. Boness, Municipal Prosecutor, Anchorage, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

Philip P. Sheridan was convicted of misdemeanor driving while intoxicated in 2003.[1] Because Sheridan had two prior convictions for this offense, he faced a mandatory minimum sentence of 60 days' imprisonment.[2] But Sheridan argued that his prior convictions were constitutionally invalid and that, for this reason, they should not be counted when determining his mandatory minimum sentence.

The district court held that, whatever the potential flaws in Sheridan's prior convictions, he had no right to attack those prior convictions at the sentencing proceedings for his current offense. *See Brockway v. State,* 37 P.3d 427, 429–430 (Alaska App.2001) (holding that a defendant generally has no right to collaterally attack prior convictions at the sentencing hearing for a new crime, even if the defendant's sentence for the new crime is being enhanced on account of those prior convictions). Sheridan now appeals the district court's ruling.

For the reasons explained here, we conclude that Sheridan's briefing of his underlying claim of error is so inadequate that it must be deemed a waiver of the claimed error. Moreover, even if Sheridan had adequately briefed his underlying claim of error, he would still not be entitled to the relief he seeks in this appeal—*i.e.,* to be sentenced without his prior convictions counting toward the calculation of his mandatory minimum sentence. For these two reasons, we affirm the decision of the district court.

*Sheridan's underlying claim of error, and why we conclude that it is inadequately briefed*

■ Sheridan's attack on his prior convictions is based on the Alaska Supreme Court's decision in *Williford v. State,* 674 P.2d 1329 (Alaska 1983). At the time that *Williford* was litigated, AS 28.35.030(a)—the Alaska statute defining the offense of driving while intoxicated—had three clauses. Subsection (a)(1) prohibited a person from driving while under the influence of intoxicating liquor or any of the controlled substances listed in AS 17.10.230(13) and AS 17.12.150(3). Subsection (a)(2) prohibited a person from driving when their blood alcohol content was 0.10 percent or more. Finally, subsection (a)(3) prohibited a person from driving if they were "under the combined influence of intoxicating liquor and another substance".[3]

The defendant in *Williford* challenged this third clause of the statute, arguing that its reference to "the combined influence of intoxicating liquor and another substance" was unconstitutionally vague.[4] The supreme court agreed, and struck down subsection (a)(3).[5]

Sheridan's two prior convictions were entered in 1982 and 1983, when the Alaska DWI statute contained this invalid subsection (a)(3). Sheridan argues that, because this

---

1. Anchorage Municipal Code § 9.28.020(A).

2. AMC § 9.28.020(C)(1)(c).

3. The former version of AS 28.35.030(a) is quoted in *Williford,* 674 P.2d at 1330 n. 1.

4. *Williford,* 674 P.2d at 1330.

5. *Id.* at 1331–32.

portion of the statute was declared unconstitutional in *Williford,* we must conclusively presume that his prior convictions are invalid.

Sheridan's arguments falter on the fact that his two prior DWI convictions were not prosecuted under this state statute, but rather under the Anchorage DWI ordinance, AMC § 9.28.020(B). It is true that, at the time of Sheridan's convictions in 1982 and 1983, the Anchorage ordinance did contain a third clause—020(B)(3)—that was facially similar to AS 28.35.030(a)(3). But this third clause of the municipal ordinance was worded in a way that potentially saved it from the constitutional infirmity discussed in *Williford.* The third clause of the ordinance prohibited a person from driving

> while ... under the combined influence of intoxicating liquor and ... another substance, *to a degree which renders [the person] incapable of driving safely.*

Former AMC § 9.28.020(B)(3) (1983) (emphasis added).

This italicized language mirrors the wording of the Uniform Vehicle Code.[6] In *Williford,* our supreme court conceded that a statutory provision containing this language—that is, a statutory provision expressly "focus[ing] on driving impairment"—was distinguishable from the portion of AS 28.35.030 that was under attack in *Williford.*[7]

Indeed, the supreme court rejected a series of cases cited by the State in support of AS 28.35.030(a)(3) because the court concluded that the State's cases were "inapposite" to the question at hand. The supreme court concluded that the State's cases were not pertinent to the constitutionality of AS 28.35.030(a)(3) because those cases dealt with "statutes [that] focus on how substances affect a [driver's] ability, rather than on what substances a driver has consumed".[8] As an example of such an "inapposite" statute, the supreme court cited California Vehicle Code § 312, which defined the term "drug" as:

any substance or combination of substances, other than alcohol, which could so effect the nervous system, brain, or muscles of a person as to *impair,* to an appreciable degree, *his ability to drive a vehicle* in the manner that an ordinarily prudent and cautious man, in full possession of his faculties, using reasonable care, would drive a similar vehicle under like conditions.

*Williford,* 674 P.2d at 1331 (emphasis in the original).

In other words, the supreme court in *Williford* carefully distinguished former AS 28.35.030(a)(3) (the statute under attack in *Williford* ) from provisions such as the one found in the Uniform Vehicle Code and in Anchorage Municipal Ordinance § 9.28.020(B)(3)—provisions which expressly focus on proof of a driver's impairment. One might reasonably argue that the supreme court invalidated AS 28.35.030(a)(3) precisely because this statute was not worded like the Uniform Vehicle Code and the Anchorage municipal ordinance. But even construing *Williford* in the light most favorable to Sheridan, the most that can be said is that, when the supreme court declared that AS 28.35.030(a)(3) was unconstitutionally vague, the supreme court expressly declined to rule on the constitutionality of statutes worded like the Anchorage ordinance.

In his brief to this Court, Sheridan mentions the fact that his two prior DWI convictions were prosecuted under the Anchorage ordinance. But then Sheridan conclusorily declares, "AMC 9.28.020(A)(3) [*sic:* 020(B)(3) ] was found to be void for vagueness in *Williford v. State* ". As we have just explained, this is not true.

Sheridan's discussion of this point of law is confined to the single sentence we have just quoted. He offers no analysis of *Williford,* and no explanation of why he believes that *Williford* invalidated the municipal ordinance under which he was prosecuted. Accordingly, we conclude that Sheridan has waived his

---

**6.** National Commission on Uniform Traffic Laws and Ordinances, Uniform Vehicle Code: Rules of the Road with Statutory Annotations, 54 (1979 Supp.). This uniform law is cited in *Williford,* 674 P.2d at 1331.

**7.** *Williford,* 674 P.2d at 1331.

**8.** *Id.*

underlying claim of error because of inadequate briefing.[9]

*Even if Sheridan had adequately briefed his underlying claim of error, he would still not be entitled to the relief he seeks*

■ Even if Sheridan had adequately briefed his claim that there was a constitutional flaw in subsection (B)(3) of Anchorage's former DWI ordinance, and even assuming (for purposes of argument) that there was indeed a constitutional flaw in that subsection, Sheridan's case would still be controlled by our recent decision in *Brodigan v. State*, 95 P.3d 940 (Alaska App.2004).

Sheridan does not assert that he was prosecuted under the challenged subsection of the ordinance, subsection (B)(3). Instead, he simply points out that the two judgements entered against him do not refer to a specific subsection of the DWI ordinance. These judgements merely state that Sheridan was convicted of driving while intoxicated under Anchorage Municipal Ordinance "9.28.020(A)". Because the two judgements do not specify the Municipality's theory of prosecution—that is, because the two judgements fail to expressly disclaim any reliance on the "another substance" clause of subsection (B)(3) that was ostensibly invalidated in *Williford*—Sheridan argues that we must presume that both of Sheridan's prior prosecutions were pursued under the invalid subsection of the statute.

We rejected the same argument in *Brodigan*, and we do so again in Sheridan's case. The *Williford* decision did not strike down Alaska's DWI law in its entirety. Rather, *Williford* held that one alternative theory of prosecution—subsection (a)(3) of the statute—was unconstitutionally vague. To determine whether *Williford* undermines the validity of a DWI conviction, one must know and evaluate the facts of that particular case.

Sheridan presumably knows the facts of his prior cases, and knows whether the supreme court's ruling in *Williford* potentially applies to his prior cases. But Sheridan has never asserted that he himself was prosecuted under former AMC 9.28.020(B)(3) for being under the combined influence of intoxicating liquor and "another substance". Indeed, when we examine the written complaints that initiated Sheridan's prior DWI prosecutions, we see that both of them alleged that Sheridan drove with a blood alcohol level of 0.10 percent or more. (One complaint alleges that Sheridan's blood alcohol level was 0.29 percent, while the other alleges that his blood alcohol level was 0.30 percent.)

In other words, even if we construed *Williford* as invalidating subsection (B)(3) of the former Anchorage municipal ordinance, Sheridan has presented nothing to suggest that he was prosecuted under that subsection of the ordinance, or that the supreme court's holding in *Williford* undermined the validity of either of his prior convictions.

In *Brodigan*, we held that a defendant's prior DWI convictions are presumed to be valid—and that, therefore, a defendant who asserts that there is a constitutional infirmity in a prior conviction is obliged, at the very least, to present some affirmative evidence that the prior conviction is indeed constitutionally infirm.[10] Under *Brodigan*, Sheridan was obliged to present the district court with some good reason to believe that the *Williford* decision undermined the validity of his prior convictions—that is, some evidence that he was prosecuted under the allegedly invalid clause of the ordinance. Because Sheridan did not do so, the district court could properly reject his attack on those convictions.

*Conclusion*

The judgement of the district court is AFFIRMED.

9. See *Katmailand, Inc. v. Lake and Peninsula Borough*, 904 P.2d 397, 402 n. 7 (Alaska 1995); *Petersen v. Mutual Life Ins. Co. of New York*, 803 P.2d 406, 410 (Alaska 1990); *Wren v. State*, 577 P.2d 235, 237 n. 2 (Alaska 1978); *Kristich v.*

*State*, 550 P.2d 796, 804 (Alaska 1976); *Lewis v. State*, 469 P.2d 689, 691–92 (Alaska 1970).

10. *Brodigan*, 95 P.3d at 943–44.