NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| JUDE M., | ) |
| | ) Supreme Court No. S-16852 |
| Appellant, | ) |
| | ) Superior Court No. 3AN-11-00121 CN |
| v. | ) |
| | ) MEMORANDUM OPINION |
| STATE OF ALASKA, DEPARTMENT | ) AND JUDGMENT* |
| OF HEALTH & SOCIAL SERVICES, | ) |
| OFFICE OF CHILDREN'S SERVICES, | ) No. 1683 – July 18, 2018 |
| | ) |
| Appellee. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Andrew Guidi, Judge.

Appearances: Olena Kalytiak Davis, Anchorage, for Appellant. Laura Fox, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Appellee. Marika R. Athens, Assistant Public Advocate, and Chad W. Holt, Public Advocate, Anchorage, for Guardian Ad Litem.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

---

\*      Entered under Alaska Appellate Rule 214.

## I. INTRODUCTION

In *Jude M. v. State, Department of Health & Social Services, Office of Children's Services* (*Jude M. I*),[1] we reviewed the superior court's order appointing a guardian for Jude M.'s daughter, Dana.[2] We concluded that one of the factual findings underlying the guardianship order — "that Dana was at risk of sexual abuse by" Jude — was not supported by expert testimony.[3] We accordingly vacated the guardianship order and remanded for "reconsideration of whether clear and convincing evidence, including the testimony of qualified expert witnesses, supports a finding that Dana would likely suffer serious emotional or physical damage if placed in Jude's custody."[4]

On remand the Office of Children's Services (OCS) submitted a proposed order reaffirming the guardianship decision on the ground that Jude was unable "to meet [Dana's] caregiving needs." Despite Jude's opposition, the superior court entered OCS's proposed order. Jude appeals, arguing the superior court erroneously "rubber-stamped" the proposed order. He also raises a claim of ineffective assistance of counsel. Because the record does not substantiate either claim of error, we affirm the superior court's judgment.

## II. FACTS AND PROCEEDINGS

### A. Background

Dana was born to Jude M. and Marya M. in July 2008. She is an "Indian

---

[1]     394 P.3d 543 (Alaska 2017).

[2]     We use pseudonyms throughout this memorandum opinion to protect the privacy of family members.

[3]     *Jude M. I*, 394 P.3d at 559.

[4]     *Id.* at 561.

child" for purposes of the Indian Child Welfare Act.[5] OCS became involved with Dana and her parents in mid-2009 because Jude was under investigation for possessing pornographic images of his minor half-sister and Marya was abusing alcohol and neglecting Dana. OCS developed a safety plan and placed Dana with Jude's friends, the Carelawns.

OCS returned Dana to Marya in November 2009. That same month, Jude was arrested, and he subsequently pleaded guilty in federal court to transportation of child pornography. He received a 60-month prison sentence and was not released until 2014.

The present case began in April 2011, while Jude was serving his federal sentence. OCS removed Dana from Marya's care because she was again abusing substances and neglecting Dana. The superior court adjudicated Dana a child in need of aid,[6] and OCS placed her again with the Carelawns. OCS later transferred Dana to the Winsomes, Marya's out-of-state relatives. In December 2014, following a trial, the superior court terminated Marya's parental rights but declined to terminate Jude's.

The superior court held a second termination trial in late 2015. During this trial the court considered again whether to terminate Jude's parental rights and, in the alternative, whether to appoint the Winsomes to be Dana's guardians. The court issued an order in February 2016 again declining to terminate Jude's parental rights but granting OCS's petition to appoint the Winsomes as Dana's guardians.

---

[5]     25 U.S.C. § 1903(4) (2012).

[6]     *See* AS 47.10.011(2) (parental incarceration), (10) (parental substance abuse). Following the 2014 and 2015 termination trials, discussed below, the superior court found Dana to be a child in need of aid under AS 47.10.011(7) on the ground that Jude posed a "substantial risk" of sexually abusing her.

In granting the guardianship request, the superior court made three primary determinations.[7]  First, it determined that OCS had made active efforts to provide remedial services to Jude but that those efforts had thus far been unsuccessful.  Second, the court determined Dana would "likely suffer serious emotional or physical harm if returned to [Jude's] custody."  The court relied in large part on Jude's history of incestuous relationships and his sexual attraction to teenagers.  Third, the court determined that Dana's "best interests w[ould] be served by the appointment" of the Winsomes as her guardians.

## B.    First Appeal (*Jude M. I*)

Jude appealed the guardianship decision, making a number of legal and factual arguments.[8]  In April 2017 we issued our opinion in *Jude M. I* and rejected most of Jude's arguments.[9]

We agreed with Jude in one respect, however:  we declined to affirm the superior court's determination that Dana would likely suffer serious emotional or physical harm if returned to Jude.[10]  As we explained, the superior court's harm determination was based on three considerations:

> (1) that Jude "still poses a significant risk of re-offense";
> (2) that "there are good reasons to be cautious" about reunifying Jude with Dana given his extensive sexual history with relatives and teens and "the fact that [Dana] will be a

---

[7]    *See Jude M. I*, 394 P.3d at 554 (listing three requirements for imposition of guardianship of Indian child).

[8]    *See id.* at 550-61.

[9]    *Id.*

[10]    *Id.* at 558-61.

teenager in six years"; and (3) Jude's "inability to meet [Dana's] caregiving needs."[11]

We concluded that the superior court did not "clearly err[] when it found that Jude posed a 'significant' risk of sexual reoffense" — the first guardianship consideration.[12] We similarly approved of the superior court's reliance on the third consideration, Jude's inability to meet Dana's needs.[13] But we concluded that the second consideration — the concern that Jude posed a risk of sexual harm to Dana — found "no support in the expert testimony given at trial."[14] We noted, among other things, that a psychologist retained by OCS "testified that the risk Jude would sexually offend with his daughter was essentially nonexistent."[15]

Because the superior court's determination that Dana would likely suffer harm if returned to Jude's care was based in part on a consideration unsupported by expert testimony, we vacated the guardianship order and "remand[ed] for the superior court to consider whether . . . there remains 'clear and convincing evidence, including testimony of qualified expert witnesses,' that returning Dana to Jude's custody will cause her serious emotional or physical damage."[16] We also required the superior court to reconsider the question whether OCS's active efforts had been unsuccessful, because the

---

[11]     *Id.* at 559 (alterations in original).

[12]     *Id.*

[13]     *Id.* at 559-60.

[14]     *Id.* at 559.

[15]     *Id.* (emphasis omitted).

[16]     *Id.* at 561 (quoting 25 U.S.C. § 1912(e) (2012)).

court's conclusion on this matter was based on its determination that Dana would likely be harmed if returned to Jude's custody.[17]

## C.    Proceedings On Remand

On June 8, 2017, OCS filed a "Motion for Entry of Findings" in the superior court, asserting that the court "c[ould] resolve the issues posed by the remand on the existing record." OCS requested that the court "clarify its previous findings to state that [Jude's] inability to meet [Dana's] caregiving needs was, by itself, sufficient to justify removal." OCS also requested that the court "clarify that the active efforts to provide remedial services and rehabilitative programs were not successful" due to Jude's ongoing inability to meet Dana's needs. OCS included with its motion a short proposed order to this effect.

The attorney representing Jude on remand did not file a timely opposition to OCS's June 8 motion.[18] On July 21, over a month after the deadline for filing an opposition had elapsed, the attorney filed a motion requesting additional time to respond because he was "new to [his job], the case, and relatively new to CINA litigation." The superior court granted an extension until August 4, but Jude's attorney did not file an opposition by that date. Instead, on August 8 the attorney filed a second request for an extension, representing that he was overwhelmed by his caseload and "relatively new to CINA practice" and that he needed to consult with Jude's appellate attorney about this "complicated case."

Jude's remand attorney finally filed an opposition to OCS's motion on August 25. The opposition argued that the lack of evidence regarding likelihood of harm

---

[17]    *Id.* at 558.

[18]    *See* Alaska R. Civ. P. 77(c)(2) (providing ten days to file opposition to a motion); CINA Rule 1(e) (stating Alaska R. Civ. P. 77 applies to CINA proceedings).

and active efforts that this court had identified in its opinion required the superior court to make additional findings rather than merely clarify its prior ruling. The opposition also asserted that additional findings were needed because the "situation is not static."

The superior court entered OCS's proposed order reaffirming its guardianship decision on August 28. The court subsequently granted Jude's second request for an extension, retroactively extending the deadline to file an opposition until August 25, which is the date on which Jude's attorney had in fact filed the opposition.

## III. DISCUSSION

Jude claims on appeal that the superior court erred by "rubber-stamping" OCS's proposed findings without independently considering the evidence. He also claims that his remand attorney's performance was deficient because his opposition to OCS's Motion for Entry of Findings was untimely and failed to respond to OCS's arguments.

### A. The Superior Court Did Not "Rubber-Stamp" The Proposed Order.

Jude claims the superior court failed to discharge its duty on remand to "reconsider . . . whether the evidence supports a likelihood of harm [and] . . . whether the active efforts in this case were unsuccessful"[19] because the superior court "rubber-stamped [OCS's] meager proposed findings without a single edit, addition, or deletion." Jude notes that the findings in the order on remand "have no specific citations to the record," and he argues that we are unable to review these findings because the superior court provided "no explanation of the reasoning behind the findings." We review these

---

[19] *Jude M. I*, 394 P.3d at 558.

arguments de novo because the sufficiency of the superior court's findings is a legal question.[20]

We conclude the superior court did not improperly "rubber-stamp" the proposed order. A trial court is permitted to adopt a party's proposed order so long as "the [proposed] findings and conclusions 'reflect the court's independent view of the weight of the evidence.' "[21] Jude has not shown that the superior court's order on remand fails to represent the court's independent view of the evidence. To the contrary, the record — including the court's orders following the two trials in this case — indicates that the superior court has conscientiously weighed the evidence throughout the course of this case. And we must presume that the superior court properly discharged its duties absent a showing to the contrary.[22]

---

[20]     *Horne v. Touhakis*, 356 P.3d 280, 282 (Alaska 2015); *see also Jude M. I*, 394 P.3d at 550 (" 'Whether a trial court's findings are consistent with the child in need of aid' or other applicable statutes 'is a question of law that we review de novo.' " (quoting *Tessa M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 182 P.3d 1110, 1114 (Alaska 2008))).

[21]     *Harrelson v. Harrelson*, 932 P.2d 247, 250 n.2 (Alaska 1997) (quoting *Smith v. Smith*, 845 P.2d 1090, 1093 n.3 (Alaska 1993)).

[22]     *See Brodigan v. State*, 95 P.3d 940, 944 (Alaska App. 2004) ("[E]very act [of the court] is presumed to have been rightly done until the contrary appears." (second alteration in original) (quoting *Jerrel v. State*, 851 P.2d 1365, 1372 (Alaska App. 1993), *overruled on other grounds by David v. State*, 372 P.3d 265 (Alaska App. 2016))); *cf. Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 386 (2008) ("An appellate court should not presume that a district court intended an incorrect legal result when the order is equally susceptible of a correct reading . . . ."); *Ross v. Superior Court*, 569 P.2d 727, 736 (Cal. 1977) ("[I]n the absence of any contrary evidence, we are entitled to presume that the trial court . . . properly followed established law." (omission in original) (quoting *Serrano v. Workmen's Comp. Appeals Bd.*, 94 Cal. Rptr. 511, 513 (Cal. App. 1971))).

Moreover, the findings in the remand order "resolve all critical areas of dispute in the case and are sufficiently detailed to allow for meaningful appellate review."[23] The superior court's order stated that "[a]s explained in the Alaska Supreme Court's opinion in [*Jude M. I*], at pages 29-30 [of the slip opinion], [Jude's] inability to meet [Dana's caregiving] needs is likely to cause serious emotional or physical damage to [Dana] if she is returned to his custody." Thus, the superior court's order incorporated part of our *Jude M. I* opinion. In the two cited pages, we provided a thorough summary of the evidence supporting the superior court's conclusion that Jude was unable to meet Dana's caregiving needs, including expert testimony on Dana's specific needs, Jude's shortcomings as a parent, and the hurdles to permanently reuniting Dana with Jude.[24] By incorporating this lengthy discussion, the superior court provided a detailed explanation for its determination that Dana would likely suffer serious harm if returned to Jude's care. The superior court also reaffirmed its prior determination that OCS's active efforts had not been successful, explaining that Jude "intentionally refused to talk to" two of Dana's therapists and that Jude "is unable to meet [Dana's] caregiving needs."

The grounds on which the superior court relied are thus clear. Jude has not pointed out any critical issues that the superior court failed to resolve. He also does not contend, let alone show, that the superior court's findings are clearly erroneous.[25] The superior court therefore did not err in entering OCS's proposed order.

---

[23] *Price v. Eastham*, 128 P.3d 725, 727 (Alaska 2006).

[24] *Jude M. I*, 394 P.3d at 559-60.

[25] *See id.* at 550 (explaining that whether a child would likely suffer serious harm if returned to a parent is a question of fact reviewed for clear error).

**B.      Jude Has Not Shown That He Received Ineffective Assistance Of Counsel.**

Jude contends that his representation on remand was constitutionally inadequate.[26]  We review a claim of ineffective assistance of counsel de novo.[27]  To establish ineffective assistance, a parent must make two showings:  (1) counsel's "performance was below a level that any reasonably competent attorney would provide";[28] and (2) there is at least a "reasonable doubt that [counsel's] incompetence contributed to the outcome" of the proceeding.[29]  We "apply a strong presumption of competence" in evaluating a claim of ineffective assistance of counsel.[30]  We also bear in mind that "the standard for ineffective representation is one of minimal competence"[31]

---

[26]      *See V.F. v. State*, 666 P.2d 42, 44-45 (Alaska 1983) (holding that a parent has a due process right to effective assistance of counsel in a proceeding for termination of parental rights).

[27]      *Stanley B. v. State, DFYS*, 93 P.3d 403, 408-09 (Alaska 2004).

[28]      *Chloe W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 336 P.3d 1258, 1265 (Alaska 2014).

[29]      *David S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 270 P.3d 767, 784 (Alaska 2012) (quoting *Risher v. State*, 523 P.2d 421, 425 (Alaska 1974)).

[30]      *Id.* at 784 (quoting *State v. Jones*, 759 P.2d 558, 569 (Alaska App. 1988)).

[31]      *Jones*, 759 P.2d at 568; *see also S.B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 61 P.3d 6, 16 (Alaska 2002) ("Lawyers may display a wide spectrum of ability and still have their performance fall within the range of competence displayed by one of ordinary training and skill." (alteration omitted) (quoting *Risher*, 523 P.2d at 424)).

and that "reasonable tactical decisions are virtually immune from subsequent challenge even if, in hindsight, better approaches could have been taken."[32]

### 1. Jude has not shown that he was prejudiced by the timing of his attorney's filing.

Jude first argues that his remand attorney rendered ineffective assistance because he failed to oppose OCS's Motion for Entry of Findings in a timely manner. He contends that his remand attorney did not file the opposition until after "the trial court had already granted [OCS's] motion and rubber-stamped [OCS's] proposed findings" and that he thus had "no voice in the remand proceedings."

But the record does not support Jude's contentions; the record instead shows that the opposition was filed three days before the superior court ruled on the motion.[33] Moreover, the superior court retroactively granted the second motion for an extension, and thus we presume the superior court considered the opposition.[34]

---

[32] *Chloe W.*, 336 P.3d at 1265 (quoting *Chloe O. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 309 P.3d 850, 858-59 (Alaska 2013)).

[33] There are two copies of Jude's opposition in the record, one date-stamped August 25 and the other August 29. The latter copy appears to have been filed by OCS as an attachment to its reply to Jude's opposition. The CourtView docket confirms that Jude's attorney filed the original opposition on August 25. Even if the record were ambiguous, we would assume the opposition was filed August 25, because Jude bears the burden of proof in this appeal. *See id.* (placing burden on parent alleging ineffective assistance of counsel to establish both deficient performance and prejudice).

[34] *Cf. Brodigan v. State*, 95 P.3d 940, 944 (Alaska App. 2004) ("[E]very act [of the court] is presumed to have been rightly done until the contrary appears." (second alteration in original) (quoting *Jerrel v. State*, 851 P.2d 1365, 1372 (Alaska App. 1993), *overruled on other grounds by David v. State*, 372 P.3d 265 (Alaska App. 2016))).

Accordingly, we conclude that the failure to earlier file an opposition had no effect on the superior court's ruling.[35]

> ### 2. Jude has not shown that his attorney's decision to argue that the superior court should reopen the record and to abandon other arguments was unreasonable.

Jude also argues that his remand attorney rendered ineffective assistance because the attorney filed an opposition that focused entirely on convincing the superior court to reopen the record. Jude argues that his attorney "fail[ed] to respond, as a[] minimally qualified attorney would, to the arguments made by [OCS] regarding the specific issues" we identified in *Jude M. I*: "whether the record contains clear and convincing evidence that 1) [OCS's] active efforts were unsuccessful, and 2) that Dana would likely be seriously harmed by a return to her father's care."

Jude fails to show that his attorney's performance was constitutionally deficient. Our *Jude M. I* opinion instructed the superior court to reconsider "whether clear and convincing evidence, including the testimony of qualified expert witnesses, supports a finding that Dana would likely suffer serious emotional or physical damage if placed in Jude's custody" and also to reconsider whether OCS's active efforts had been unsuccessful.[36] Although *Jude M. I* did not expressly authorize the superior court to reopen the record or consider new evidence, such action would not have been

---

[35] For a similar reason, we reject Jude's related argument that his attorney's decision to style his opposition to OCS's motion as an "Objection" constituted ineffective assistance of counsel. Nothing in the record indicates that the superior court failed to give due consideration to the opposition because of its title. And we find no basis for Jude's more general speculative contention that his attorney's supposed pattern of "substandard" representation caused the superior court to not "take [Jude's] arguments seriously."

[36] 394 P.3d 543, 558, 561 (Alaska 2017).

inconsistent with the mandate of our decision.[37] The superior court thus had discretion to reopen the record.[38] And as Jude acknowledges in his brief, the opposition filed by his remand attorney "made strong arguments for the prudence of the trial court receiving an update on the progress made by Jude . . . and the situation for Dana." Given the "strong presumption of competence," we cannot conclude it was unreasonable for Jude's remand attorney to request that the superior court reopen the record and consider new evidence.[39]

Furthermore, "[a]ttorneys exist to exercise professional judgment, which often involves setting priorities."[40] An attorney reasonably may choose to concede or abandon certain arguments and focus on others that appear, in the attorney's professional judgment, to be stronger.[41] If Jude's remand attorney reasonably chose to argue that the

---

[37] *See A.M. v. State*, 945 P.2d 296, 300-01 (Alaska 1997) ("A trial court has no authority to deviate from a specific mandate of the supreme court but may take actions not inconsistent with our decision." (footnote omitted)). The scope of the mandate and the issue whether the superior court deviated from the mandate present questions of law that we decide de novo. *Id.* at 300.

[38] *Cf. Enders v. Parker*, 125 P.3d 1027, 1037-38 (Alaska 2005) (explaining that where we remanded for specific findings on a particular issue, "[t]he superior court . . . had discretion to decide whether to conduct an evidentiary hearing or accept additional evidence"); *R.J.M. v. State, Dep't of Health & Soc. Servs.*, 973 P.2d 79, 86 (Alaska 1999) ("Although the superior court could have considered [new evidence] [on remand], it did not abuse its discretion in not doing so.").

[39] *David S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 270 P.3d 767, 784 (Alaska 2012) (quoting *State v. Jones*, 759 P.2d 558, 569 (Alaska App. 1988)).

[40] *United States v. Mason*, 774 F.3d 824, 830 (4th Cir. 2014).

[41] *See Florida v. Nixon*, 543 U.S. 175, 191-92 (2004) (recognizing that counsel in death penalty case may, under certain circumstances, reasonably concede

(continued...)

superior court should reopen the record, the attorney reasonably could have chosen to abandon weaker arguments concerning the existing record. Therefore, in light of the presumption of competence, we cannot conclude that Jude's attorney made an unreasonable decision when he declined to respond directly to OCS's arguments and instead focused the superior court's attention on his argument that the court should reopen the record.

Jude contends, however, that a "pattern of repeated and profound incompetence" by his remand attorney undermines any inference that the attorney exercised reasonable strategic judgment in choosing not to respond directly to OCS's arguments in the Motion for Entry of Findings. Jude notes that, among other failings, his remand attorney repeatedly missed deadlines; mislabeled the opposition as an "Objection," which Jude asserts is a "form . . . not found in Alaska's CINA or Civil Rules"; and "inform[ed] the court that [he] was inexperienced with his job, with the case and with CINA litigation generally."

But these circumstances do not "rul[e] out the possibility of a [sound] tactical reason to explain counsel's conduct."[42] An otherwise knowledgeable and competent attorney can miss a filing deadline or improperly label a filing. Jude's attorney's failings in these respects thus do not show he acted incompetently in arguing that the superior court should reopen the record. And Jude's attorney's representations that he was overwhelmed, new to CINA litigation, and unfamiliar with Jude's case were

---

[41] (...continued) defendant's guilt and focus instead on persuading jury not to impose death sentence); *see also Haley B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, No. S-16562, 2017 WL 4767710, at \*4 & n.14 (Alaska Oct. 19, 2017) (collecting cases and stating "[a] lawyer is permitted to prioritize strong arguments over those she perceives as weak").

[42] *Jones*, 759 P.2d at 569.

all made at least two weeks before the attorney filed the opposition on August 25, 2017. These representations thus do not directly show that Jude's attorney lacked an adequate grasp of the record and applicable legal principles at the time he wrote and filed the opposition.

We therefore conclude Jude has not shown that he received ineffective assistance of counsel.

## IV.   CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the superior court.